# Davis, Appellant, *v.* Pennsylvania Railroad Company.

*Railroads—Construction of causeway—Farm crossing—Petition for jurors—Jurisdiction—Act of February 19, 1849, secs. 11 and 12, P. L. 79.*

A petition by a landowner for the appointment of viewers to assess damages against a railroad company for failure to provide a farm crossing must be granted, and jurors appointed forthwith, if the petition is in proper form and contains all essential jurisdictional averments. The court has no power to grant a preliminary rule to show cause, take testimony under such rule and dismiss the petition on the ground that the allegations of fact in it were not true. In such a proceeding all disputed matters of fact are for the viewers.

Argued Nov. 11, 1909.    Appeal, No. 121, Oct. T., 1909, by plaintiff, from order of C. P. Lancaster Co., Trust Book No. 21, page 95, dismissing petition to appoint viewers to assess damages in case of Joseph W. Davis v. Pennsylvania Railroad Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Petition for the appointment of viewers. Before LANDIS, P. J.

The opinion of the Superior Court states the case.

*Error assigned* was in dismissing the petition.

*B. F. Davis*, for appellant.

*Henry Wolf Biklé*, with him *John A. Nauman*, for appellee.

OPINION BY HEAD, J., July 20, 1910:

The appellant owns and lives on a farm in Lancaster county through which the railroad company, the appellee, located and constructed one of its branch lines. As the line was con-

structed it passed through his land chiefly above or below the natural grade and thus cut it into two portions. The necessary land for the right of way was appropriated by the company under its right of eminent domain, and the damages therefor were in due time ascertained by the usual methods and have been paid.

Some time later the appellant began this proceeding by filing his petition in the court of common pleas, in which, after describing the manner in which his property had been divided, he further averred as follows, "and the said Pennsylvania Railroad Company has neglected and refused to make a causeway or bridge over said road for the use of himself and the occupants of his land to cross or pass over the same with wagons, carts and implements of husbandry as occasion may require, and has also neglected to maintain and keep in good repair any such causeway. That no crossing or causeway has been made at any place along the line of said railroad, where it crosses your petitioner's land, for his benefit or use. That they have placed across their track on the east side of the plaintiff's land a kind of crossing, put up, as petitioner believes, for the accommodation of the contractor of the said railroad, and is not located in any proper place, nor is it any benefit to your petitioner's premises, and is not maintained nor kept in good repair by said railroad company." The petition then prayed for the appointment of viewers to assess the damages sustained by the petitioner by reason of the neglect and refusal of the railway to make or to properly maintain a causeway in the manner provided by the act of assembly. The court below in the first place granted a rule to show cause why the viewers should not be appointed as prayed for. The defendant company filed an answer in which it traversed the allegations of fact in the petition alleging that it had constructed one crossing or causeway for the use of the plaintiff and was maintaining it in proper repair. The company then proceeded to take the depositions of witnesses against 'the protest of plaintiff's counsel who filed the following objection thereto: "I object to the taking of depositions on this rule for the reason that the matters referred to in the petition and

answer are matters for the jury of viewers to dispose of." The depositions were nevertheless taken, and the court, after argument, undertook to determine that the allegations of fact in the petition were not true, and that as a consequence the petitioner had not shown that he was a person aggrieved within the meaning of the statute, and discharged the rule. From this order the petitioner appeals.

The eleventh section of the Act of February 19, 1849, P. L. 79, provides that when the company and the landowner are unable to agree upon the damages done to the land of such owner, "the court of common pleas of the proper county, on application thereto by petition either by said company or owner, shall appoint seven discreet and disinterested free-holders," etc. Provision is then made for the view, report, etc., the various steps of such proceeding being so familiar that they need not here be quoted.

The twelfth section of the same act imposes upon the railroad company, in a case like the one now before us, the obligation of making and maintaining a good and sufficient causeway whenever the same may be necessary to enable the occupant of the land to cross or pass over the same with wagons, carts and implements of husbandry as occasion may require. In other words, this section of the act requires the railroad company to do precisely the things which the petition avers, in the very words of the act, it has neglected and refused to do. The act then provides that in case of such neglect or refusal after request made, the company "shall be liable to pay any person aggrieved thereby all damages sustained by such person in consequence of such neglect or refusal; such damages to be assessed and ascertained in the same manner as provided in the last section for the assessment of damages." We have just seen under the eleventh section that whenever the owner presents his petition to the court setting out the necessary jurisdictional facts, it is made the duty of the court to appoint viewers. It is upon this body, and not upon the court appointing them, that the law has imposed in the first instance the duty of ascertaining the facts upon which the owner's claim for damages must rest. It would be a novelty entirely

without precedent if the court, on the coming in of the petition contemplated by the act, were to institute or permit the institution of a preliminary collateral inquiry with the idea of determining that the allegations of fact in the petition were not true. It seems to us this would be a plain usurpation of the duties imposed by the law on another tribunal. The law contemplates in such cases a jury of view. This body is required first of all to go upon the premises and actually see with their own eyes the conditions existing there. They may then have their judgment aided by the testimony of witnesses, but this will not supply their obligation to view the property.

We may concede that the court is invested with supervisory power over their report when made. If, for instance, upon exceptions to the report it should appear that the petition upon which the whole proceeding rests was lacking in the averment of any essential or jurisdictional fact, the whole proceeding might be set aside, but no authority we think can be found for the proposition that it was the legislative intent that the court could refuse the prayer of the landowner on a petition in which every necessary jurisdictional fact was properly averred. The law, however, does not make the finding of the viewers, even on questions of fact, necessarily conclusive. To either party aggrieved thereby the right of appeal is given, so that ultimately contested questions of fact may be passed upon by a jury sitting with a trial judge under the forms of the common law.

Now the proceeding contemplated under the twelfth section is precisely the same as if it were under the eleventh, and we are unable to escape the conclusion that the learned court fell into error in undertaking to determine, in the manner we have indicated, the truth of the allegations of fact averred in the petition and denied in the answer.

There are a number of considerations that must be kept in mind in determining whether or not the company has performed its statutory obligation. It is probably true that in the first instance the company is invested with discretion to locate a crossing or causeway they are required to build and maintain. In the exercise of that discretion they certainly

cannot entirely ignore the necessities or even the reasonable convenience of the landowner. The duty of the company in such cases is thus described in Dubbs v. Railroad Co., 148 Pa. 66: "The plain object of the act of 1849 was to compel railroad companies to give the owners of farms a convenient mode of access from one part to the other, when divided by a railroad. While it may not be impossible for a farmer, in gathering his crops, to make a detour of half a mile in getting from one field to an adjoining field, it would nevertheless be intolerably inconvenient. It was to provide for such and similar cases that the act of 1849 was passed. . . . As before observed, its object was to furnish convenient access from one part of the land to the other, and we quite agree with the learned court below, that the crossing referred to was necessary to give such access, and that it ought not to have been removed." It thus appears that it is of the first importance that the actual situation, as it exists on the ground, should be clearly ascertained before it can be determined whether or not the railroad company has complied with its statutory obligation.

It is clear of course under the language of the statute that the owner is given the right to but one crossing or causeway for his entire tract. The act does not attempt to define or describe the character of the structure, as that would necessarily vary according to the conditions and circumstances. One case might of necessity demand the construction of an overhead bridge, another of an archway or tunnel under the right of way, whilst in many cases the reasonable convenience of the owner can be satisfied and the obligations of the statute fulfilled by the construction of a grade crossing in a proper location.

As we have already stated, the learned counsel for the appellee has been unable to furnish any authority in support of the order appealed from, nor do we find the reasoning of the opinion of the learned judge below convincing. In Bredin v. Pittsburg & Western Railway Co., 165 Pa 262, the landowner filed his petition for the appointment of viewers. The railway company opposed the appointment for a number of reasons involving matters of fact, the chief among them being

that the former owner of the land had made a grant of the right of way and that the rights of the petitioner were acquired after that grant, etc. The learned court below, however, appointed the viewers and the railroad company appealed. In the course of the opinion the Supreme Court used the following expressions: "This certiorari brings before us nothing but the record proper of the court below. There is nothing in it that is sufficient to convict the court of error in allowing the amendment, or in appointing the viewers. Defendant company's main objections to the latter are grounded upon matters of fact which are not admitted and upon which we cannot undertake to pass at this stage of the proceedings. . . . If it should ever become necessary, these and other questions of fact can be better settled by proceeding in the regular and orderly way. The viewers have full power to inquire and report, inter alia, what, if any, damages should be paid by defendant company, and to whom payable. An attempt to anticipate and settle all questions, both of law and fact, before viewers are even appointed, is at least suggestive of obstructive proceedings."

Whilst, therefore, there is some paucity of authority on the exact question now before us, what we have is in harmony with the conclusion that seems to plainly flow from an examination of the language of the act of assembly itself.

The order discharging the rule for the appointment of viewers is reversed and set aside. The rule is reinstated and a procedendo awarded. The costs of this appeal to be paid by the appellee.